## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02791-MEH

DENISE MICHELLE HARPER,

     Plaintiff,

v.

ARROW ELECTRONICS,

     Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

Plaintiff Denise Harper ("Harper"), proceeding pro se, brings this action against her employer, Defendant Arrow Electronics ("Defendant"), asserting claims for discrimination, harassment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et al.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et al*. Defendant filed the present motion for summary judgment ("Motion"), seeking judgment in its favor on all of Harper's claims. For the reasons explained below, the Court grants Defendant's Motion.

### FINDINGS OF MATERIAL FACTS

The Court must address one matter before reciting the facts. Harper did not attach any exhibits to her response to the Motion, although she mentions doing so. Resp. at 2. The Court construes Harper's reference to "exhibits" as documents that she has submitted prior in other contexts. For example, at ECF 80, Harper submitted thirty-seven pages of documents as an exhibit to a response she filed. In an abundance of caution, the Court reviewed all such filings on the

docket in issuing this ruling.  The vast majority of those documents concern Harper's health and disability benefits.  Magistrate Judge Gordon P. Gallagher recommended, and Senior District Judge Lewis T. Babcock adopted, that Harper's claim for disability discrimination be dismissed. ECF 25, 26.  As a result, Harper does not have a pending claim for disability discrimination in her Second Amended Employment Discrimination Complaint ("SAC").  Accordingly, while the Court considered Harper's prior submitted documents, the Court only incorporates the relevant portions into its analysis here.

With that in mind, the Court makes the following findings of material facts viewed in the light most favorable to Harper, who is the non-moving party in this matter.  The facts below are numbered consistent with Defendant's Motion, and when cited elsewhere in this Order, are referenced as FMF.

1.      Denise Harper is a 49-year old, African American female. Exh. A, Denise Harper Dep., at 26:19–21; Exh. B, Declaration of Elise Lieberman, at ¶ 4.

2.      Harper was hired by Defendant on January 11, 2016. Exh. A at 35:6–8.

3.      Harper was hired for an accounting coordinator/analyst position in the Supplier Accounting Department. *Id.* at 35:9–15.

4.      The official title of Harper's position is Supplier Accounting Associate I. Exh. A at 36:4–9; Exh. C, Job Description.

5.      While Harper's job title has not changed, the duties of her position have changed over the years. Exh. A at 48:21–24.

6.      Harper's immediate supervisor was Supplier Accounting Associate Manager, Kim Griffin ("Griffin"), who is a 47-year old, White female. Exh. A at 26:9–17; Exh. B at ¶¶ 3–4.

7.      Griffin's immediate supervisor was Supplier Accounting/Finance Manager, Diann Decker ("Decker"), who is a 54-year old, White female. Exh. A at 26:11–23; Exh. B at ¶¶ 3-4.

8.      Griffin and Decker were both involved in hiring Harper into the Supplier Accounting Department. Ex. A at 45:13–25.

9.      Angela Gibson ("Gibson") is an Accounting/Finance Manager for a different department, the Accounts Payable Department, and she is a 47-year old, African American female. Exh. A at 27:2–10; Exh. B at ¶¶ 3–4.

10.     Harper's colleague, Casey Gustafson (Gustafson"), was a Team Lead on the Supplier Accounting team, reporting to Griffin, and he is a 28-year old, White male. Exh. B at ¶¶ 6, 8.b.

11.     Harper's colleague, Matthew Parks ("Parks"), worked in the Accounts Payable Department, reporting to Gibson, and he is a 33-year old, White male. *Id.* at ¶¶ 6, 8.a.

12.     Harper's colleague, Kellye Beard ("Beard"), worked in the Accounts Payable Department, reporting to Gibson, and she is a 50-year old, White female. *Id.* at ¶¶ 6, 8.a.

13.     Supplier Accounting and Accounts Payable are two distinct teams with different reporting structures, and there is no expectation that all members of the two teams receive the same training or training opportunities. *Id.* at ¶ 8.a.

14.     Defendant maintains equal opportunity employment, nondiscrimination, antiharassment, and anti-retaliation policies, as well as an open door policy and complaint procedures, including the toll-free Arrow AlertLine hotline, all of which are described in the Arrow Employee Handbook. Exh. D, relevant pages of Arrow Employee Handbook.

15.     Harper received and reviewed the Handbook and was familiar with all of these policies and procedures. Exh. A at 40:10–13, 41:15–21, 42:2–11; 42:24–43:18; Exh. E, Handbook Acknowledgment signed by Harper.

**2016 Events**

16.     Harper took FMLA leave from August 24, 2016 through November 15, 2016. Exh. A at 58:8–14.

17.     Arrow approved all FMLA leave that Harper requested. *Id.* at 58:15–17.

18.     Griffin evaluated Harper's job performance for 2016, and her overall rating was that Harper had "achieved expectations." *Id.* at 46:7–17; Exh. F, 2016 Employee Performance Review, at 1.

19.     In the 2016 performance review, Griffin noted that Harper at times used a tone in emails or on calls that sometimes came off as abrupt or unprofessional, and that they had had several conversations about it during the year. Exh. A at 46:22–47:3; Exh. F at 1.

20.     Griffin also noted that Harper needed to "work on the way she communicates with both vendors and the internal Arrow teams." Exh. A at 49:10–18; Exh. F at 3.

**2017 Events**

21.     In January 2017, Griffin had a discussion with Harper concerning complaints she had received about the tone of Harper's oral and written communications with other employees and outside vendors. Exh. A at 61:20–62:1.

22.     Griffin documented their discussion in an email she sent to Harper on January 23, 2017. Exh. G, January 23, 2017 email from Griffin to Harper.

23.    On April 24, 2017, Harper contacted Human Resources and indicated that she wanted to file a complaint concerning a comment made by Griffin that had offended her. Exh. A at 63:20–64:11; Exh. H, April 24, 2017 email from Harper to Katy DeMaio.

24.    Griffin's comment was that she thought a "Young Professionals" program that Harper had attended was "for young people" or "millennials." Exh. A at 63:23–64:2; SAC at 4.

25.    HR representative Katy DeMaio ("DeMaio") promptly investigated Harper's complaint and notified her that action had been taken to ensure the conduct would not be repeated by Griffin. *Id.* at 65:2–21.

26.    Griffin never made any other comments or remarks about Harper's age that she found offensive. *Id.* at 65:22–25, 66:10–12.

27.    Griffin never made any comments about Harper's race, color, or gender that she found offensive. *Id.* at 66:13–18.

28.    On May 3, 2017, Harper filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD"). *Id.* at 66:19–23; Ex. I, CCRD Charge.

29.    On September 25, 2017, Harper emailed the CCRD and informed the agency that she wanted it to close its investigation because Arrow was investigating her concerns and she had "complete confidence [her] concerns [were] being fully investigated." Exh. A at 68:17–69:6; Exh. J, email from Harper to CCRD.

30.    On November 2, 2017, Harper emailed the CCRD to confirm that she wished to withdraw her Charge and expressed that she did "not believe that Ms. Griffin intentionally meant to offend me." Exh. A at 69:10–23; Exh. K, email from Harper to CCRD.

31.     On November 8, 2017, the CCRD dismissed Harper's Charge based on her voluntary request that it be withdrawn. Exh. A at 70:3–71:7; Exh. L, CCRD Dismissal.

32.     Harper understood that by voluntarily withdrawing her Charge, she would not be able to pursue the allegations in the Charge through the administrative or judicial process. Exh. A at 70:18–71:1; Exh. L, CCRD Dismissal, at 2.

33.     Griffin evaluated Harper's job performance for 2017, and her overall rating was that Harper had again "achieved expectations." Exh. A at 49:22–50:10; Exh. M, 2017 Employee Performance Review, at 1.

34.     The 2017 performance review was a positive one, with Griffin noting that Harper had moved to the "Price Variance Team" where she was thriving. Exh. A at 50:11–18, 51:24–52:1; Exh. M, 2017 Employee Performance Review, at 1.

35.     In November 2017, Harper received her regular three percent raise, and her compensation has never been reduced at any time during her employment. Exh. A at 38:21–39:1.

**2018 Events**

36.     Harper took a second FMLA leave in December of 2018. *Id.* at 71:8–12.

37.     Arrow granted all of the medical leave that Harper requested in December of 2018. *Id.* at 71:16–18.

38.     Griffin evaluated Harper's 2018 job performance, and her overall rating was that Harper had again "achieved expectations." *Id.* at 52:4–14; Exh. N, 2018 Employee Performance Review, at 1.

**2019 Events**

39.     Gustafson applied, and was selected, for a Supplier Accounting Team Lead position. As the Team Lead, Gustafson received first-hand training which he was then expected to share with the rest of the Supplier Accounting team. Exh. B at ¶¶ 8.b. and c.

40.     Harper did not apply for the Supplier Accounting Team Lead position. *Id.* at ¶ 8.b.

41.     On March 1, 2019, Beard emailed her supervisor, Gibson, expressing a complaint about the way Harper had communicated with her. Exh. A at 72:14–73:3; Exh. O, email from Beard to Gibson.

42.     The same day, Griffin met with Harper to discuss the complaint received by Gibson. Exh. A at 73:6–24; Exh. P, March 1, 2019 email from Griffin to Harper.

43.     On March 15, 2019, Griffin issued an Employee Communication Record ("ECR") to Harper concerning unprofessional behavior. Exh. A at 74:3–8, 75:9–22; Exh. Q, ECR.

44.     An ECR is used to document an employee communication. It is not disciplinary or punitive and resulted in no adverse impact on Harper.  Exh. B at ¶ 10.

45.     Shortly after receiving the ECR, Harper requested that HR review it. Exh. A at 75:5–8.

46.     Harper disagreed with the feedback provided in the ECR and disagreed that she had acted unprofessionally. *Id.* at 80:1–81:14.

47.     Jordan Price, Arrow Regional Human Resources Manager, reviewed the circumstances of the ECR, concluded that the feedback provided to Harper by her manager was appropriate, and communicated her conclusion to Harper. *Id.* at 78:4–10.

48.     On April 2, 2019, Harper called the AlertLine to file a complaint. *Id.* at 82:22–83:8; Exh. R, AlertLine System Report.

49.     Human Resources Generalist/Regional Human Resources Manager Elise Lieberman ("Lieberman") met with Harper the following day, April 3, 2019, to discuss her AlertLine complaint. Exh. A at 87:4–6; Exh. B at ¶¶ 1, 7.

50.     Harper acknowledged in writing that Lieberman had documented all of the concerns that Harper wanted HR to investigate. Exh. A at 87:15–23.

51.     Lieberman and Price interviewed all involved parties and all witnesses identified by Harper as having relevant information. Exh. B at ¶ 7.

52.     Following their investigation, Lieberman and Price met with Harper to go over their findings and conclusions. Exh. A at 90:16–18.

53.     Harper disagreed with the findings and conclusions reached by Lieberman and Price. *Id.* at 91:13–15.

54.     On April 12, 2019, Harper filed a Charge of Discrimination with the Equal Employment Opportunity Commission. *Id.* at 93:14–18.

55.     On May 30, 2019, Harper filed an Amended Charge of Discrimination. Exh. S, Amended EEOC Charge.

56.     Decker completed Harper's performance evaluation for 2019, and her overall rating of Harper's performance was that she had again "achieved expectations." Exh. A at 56:6–20; Exh. T, 2019 Employee Performance Review, at 1.

57.     In the 2019 review, Decker noted that Harper could focus "on improving her awareness on how her communication comes across." Exh. A at 57:3–7; Exh. T at 1.

58.     Harper agrees that her performance reviews from 2016 through 2019 were consistent. Exh. A at 58:3–7.

**Harper's Status from April 26, 2019 to Present**

59.     The last day Harper worked was Friday, April 26, 2019. *Id.* at 102:15–17.

60.     Since April 27, 2019, Harper has been on a leave of absence from her job with Defendant. Exh. A at 102:18–22; Exh. U, Declaration of Kelly Keys, at ¶ 9.

61.     Harper has not been able to return to work since April 26, 2019, and her physicians have not released her to return to work since that date. Exh. A at 102:23–103:3.

62.     Harper remains on a medical leave of absence from Defendant. *Id.* at 103:7–8; Exh. U at ¶ 11.

63.     Harper's employment with Arrow has not been terminated. Exh. A at 103:9–11; Exh. U at ¶ 11.

64.     Harper has never been suspended from her employment, nor has she ever been denied a leave of absence or any other requested accommodation. Exh. A at 103:12–20.

**Arrow Leave and Disability Benefit Plans Procedures**

65.     Arrow provides short-term and long-term disability benefit plans for its employees, and also provides FMLA and Personal Medical and Personal Leaves of Absence. Exh. U at ¶ 2.

66.     All of these leave and disability benefits programs are administered by a third-party administrator, Lincoln Financial (formerly known as Liberty Mutual). *Id.* at ¶ 3.

67.     Any medical information or medical records necessary to evaluate, process, and administer Personal Medical leave, FMLA leave, STD, and LTD is requested directly by, and submitted directly to, Lincoln Financial.  *Id.* at ¶ 7.

68.     Arrow managers, including Angela Gibson, Diann Decker, and Kim Griffin, have no access to Harper's medical information or medical records submitted to Lincoln Financial in connection with her leave requests or disability benefit claims. *Id.* at ¶ 8.

69.     Harper exhausted 12 weeks' of FMLA leave from April 27, 2019 to July 20, 2019. Exh. A at 115:21–23.

70.     Harper received short-term disability benefits from April 27, 2019 to October 23, 2019. Exh. U at ¶ 9.

71.     Harper received long-term disability benefits from October 24, 2019 to the present. *Id.* at ¶ 10.

**Procedural History**

72.     Harper filed her initial Employment Discrimination Complaint on September 30, 2019.  ECF 1.

73.     After being ordered by the Court to cure deficiencies (ECF 4, 10), Harper filed multiple amended pleadings (ECF 8, 11, 13, 15).

74.     Harper filed her operative Second Amended Employment Discrimination Complaint (ECF 22) on December 9, 2019.

75.     Harper's Second Amended Complaint was referred to Magistrate Judge Gallagher, and on December 16, 2019, he made certain recommendation concerning the Second Amended Complaint. ECF 25.

76.     Senior Judge Babcock then accepted and adopted the Recommendation of Magistrate Judge Gallagher (ECF 25), and (a) dismissed with prejudice Claim Two of Harper's Second Amended Employment Discrimination Complaint (a claim for disability discrimination), and (b) dismissed then-Defendants Liberty Life Assurance Company of Boston and Lincoln Life Assurance Company of Boston as parties to this action (ECF 26).

## LEGAL STANDARDS

### I.    Motion for Summary Judgment

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the moving party has the burden of proof—the plaintiff on a claim for relief or the defendant on an affirmative defense—his[, her, or its] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)).  "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment."  *Id*. at 1154 (quoting 11 Moore's Federal Practice, § 56.40[1][c] (Matthew Bender 3d Ed. 2015)).  Only evidence for which the content and substance are admissible may be considered when ruling on a motion for summary judgment.  *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined.  *Celotex*, 477 U.S.

at 322.  That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); see also *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'"  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting Celotex, 477 U.S. at 324); *see Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) ("On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings  and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [its] case in order to survive summary judgment.") (quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007)). "The court views the record and draws all inferences in the light most favorable to the non-moving party."  *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II.    Treatment of Pro Se Plaintiff's Pleadings

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th

Cir. 1997)).  The Tenth Circuit interpreted this rule to mean, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## ANALYSIS

### I.  **Title VII Discrimination, Harassment, and Retaliation Claims**

#### A.  Exhaustion of Administrative Remedies

Prior to bringing a discrimination, harassment, or retaliation claim under Title VII, a plaintiff must exhaust her administrative remedies.  *See Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003).  Harper filed her initial Charge of Discrimination on April 12, 2019.  FMF ¶ 54. Three hundred days prior to that date is June 12, 2018.  Therefore, to the extent Harper alleges discriminatory or retaliatory acts prior to June 12, 2018, Harper failed to properly exhaust her administrative remedies as to those actions.  *See Jensen v. West Jordan City*, 968 F.3d 1187, 1203 (10th Cir. 2020).

#### B.  Discrimination

"To prevail on a disparate treatment claim under Title VII, a plaintiff must show that his employer intentionally discriminated against him for a reason prohibited by the statute." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1306 (10th Cir. 2005) (citing *Salguero v. City of Clovis*, 366 F.3d 1168, 1178 (10th Cir. 2004)).  When there is reliance upon circumstantial evidence, the court applies the burden-shifting framework of *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973).  *Id.*  "This burden-shifting test requires (1) the employee to

'establish[ ] a prima facie case' of discrimination; (2) the employer to show that it had a

'legitimate, nondiscriminatory reason' for its action; and (3) the employee to show that the

employer's legitimate reasons are 'mere pretext' for impermissible discrimination."  *Potter v.*

*Synerlink Corp.*, 562 F. App'x 665, 673 (10th Cir. 2014) (internal citations omitted).

      1.      Prima facie case of race, color, or gender discrimination

To demonstrate a prima facie case of discrimination, a plaintiff must show that "(1) the

victim belongs to a protected class; (2) the victim suffered an adverse employment action; and

(3) the challenged action took place under circumstances giving rise to an inference of

discrimination."  *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Sarbo v.*

*United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005)).  Defendant challenges the latter two

elements.  Mot. at 14.

Adverse employment actions include "acts that 'constitute [ ] a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing a significant change in benefits.'"  *Dick v. Phone*

*Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (quoting *Sanchez v. Denver Pub.*

*Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (internal quotation marks omitted)).  It is an

undisputed fact that Harper's employment has not been terminated.  FMF ¶¶ 62–63.

Additionally, Harper has acknowledged that Defendant has provided her with all medical leave

that has been requested.  FMF ¶¶ 17, 37, 59–60, 64, 69.

Harper complains in her SAC about not being promoted to a Team Lead position.  SAC

at 3; Exh. S.  However, it is undisputed that Harper did not apply for the job.  FMF ¶ 40.

Further, Harper contends that she did not receive the same training as three of her other

colleagues.  SAC at 3–4; Resp. at 2; Exh. S.  Plaintiff does not explain how such training (or the lack thereof) resulted in any significant change in her employment status, compensation, or benefits.  Likewise, Plaintiff does not demonstrate circumstances giving rise to an inference of discrimination.  One of the colleagues who received the training is female (Kellye Beard), and she and one other colleague (Matthew Parks) are assigned to a different team, reporting to a different manager.  FMF ¶¶ 11-12.  It is undisputed that different teams had no expectation of being provided the same training opportunities.  Also, Gustafson, the third colleague to receive training, was Harper's Team Lead and expected to attend the training and share it with his team members.  FMF ¶¶ 10, 39.  Even if the Court assumed an adverse employment action, these facts do not lead the Court to conclude there was an inference of discrimination.

Harper also seeks relief based on an alleged demotion on return from her FMLA leave. SAC at 4.  However, the alleged demotion, even if assumed true, occurred in 2016.  As mentioned earlier, any action that happened prior to June 12, 2018 is time-barred.  Therefore, Harper is prevented from raising a claim as to this action.

In *Heno v. Sprint/United Mgmt. Co.*, the Tenth Circuit held that a plaintiff who "was working in the same job, for the same pay, with the same benefits" did not demonstrate an adverse employment action.  208 F.3d 847, 857–58 (10th Cir. 2000).  In fact, the court there found that "[m]oving [the plaintiff's] desk, monitoring her calls, being 'chilly' towards her, and suggesting that she might do better in a different department simply did not affect [her] employment status."  *Id.*  Based on the undisputed facts, Harper's situation is far less egregious than the one the Tenth Circuit faced in *Heno*.  Here, Harper seeks relief based on a failure to promote for a job she did not apply for and failure to train without expectation that members in her team would even receive such training.  Harper's employment status, compensation, and

benefits remain unaffected by the alleged actions of Defendant, so she has not faced an adverse employment action.  Moreover, Plaintiff has failed to establish that, even if she had shown an adverse employment action, that there was an inference of discrimination.  For those reasons, Plaintiff fails to establish a prima facie case, and summary judgment should be entered in favor of Defendant.

### 2.        Legitimate, nondiscriminatory reasons

Assuming Plaintiff met her burden of showing a prima facie case, the Court finds that Defendant had legitimate, nondiscriminatory reasons for its actions.  Gustafson was hired as the Team Lead, in part, because he applied for the job; Harper did not.  FMF ¶¶ 39–40.  As Team Lead, he received training that other members of the team did not, and Beard and Parks received training as members of a different team.  FMF ¶¶ 39, 11–13.  Harper has a documented history of using unprofessional behavior in her communication in the workplace.  FMF ¶¶ 19–22, 41–43, 57.  Harper's manager prepared the ECR in response to a complaint regarding Harper's communication style.  *Id.*  Taken together, these facts demonstrate that Defendant has met its burden of demonstrating legitimate, nondiscriminatory reasons for its actions.

### 3.        Pretext

When the employer provides legitimate reasons for its actions, the plaintiff must show that such reasons are pretext for discrimination in order to sustain a claim.  "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *Lobato v. New Mexico Environment Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (quoting *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th

Cir.1997)) (internal quotation marks omitted).  Harper does not squarely address how Defendant's reasons are pretext; merely, she reiterates that she was denied training.  Resp. at 2. Given Harper's pro se status, the Court conducts its own inquiry into whether Defendant's reasons are pretext for discrimination.  Based on the record, the Court is unable to conclude that pretext exists in this case.  As such, even assuming Harper met her prima facie burden, she fails to state a claim on this element.  Consequently, the Court grants Defendant's Motion on that claim.

      C.    <u>Harassment Claim</u>

To avoid summary judgment, "a plaintiff must present evidence that creates a genuine dispute of material fact as to whether 'the workplace is permeated with discriminatory intimidation, ridicule, and insult[ ] that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'"  *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (quoting *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 851 (10th Cir. 2007)).   Specifically, to prove a prima facie case, a plaintiff must show "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on [race, color, or gender]; and (4) [due to the harassment's severity or pervasiveness], the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment."  *Id.* (quoting *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)). Defendant challenges Harper's claim on elements (3) and (4).

      1.    Harassment based on race, color, or gender

Harper alleges only one instance of a derogatory or offensive comment.  That comment, made by Griffin, was that she thought a "Young Professionals" program was meant "for young people" or "millennials." Exh. A at 63:23–64:2; SAC at 4.  Katy DeMaio from HR investigated

that complaint and alerted Harper that actions had been taken to prevent repeated conduct by Griffin.  Exh. A at 65:2–21.  This is the only comment Griffin (or anyone else) made about Harper's age that she found offensive. Exh. A at 65:22–25, 66:10–12.  This Court notes that this comment occurred in 2017 and is thus time-barred from consideration anyway.  It is undisputed that Griffin never made any comments about Harper's race, color, or gender that she found offensive. Exh. A at 66:13–18.  Harper alleges no other instance (and the Court finds no other evidence in the record) of intimidation, ridicule, or insult as to Harper based on her race, color, or gender.  As such, Harper's claim for harassment fails.

2.      Severe or pervasive harassment

Even if Harper demonstrates harassment based on her race, color, or gender, she has not shown that the workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently *severe or pervasive* to alter the conditions of her employment and create a hostile working environment.  *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012).  Courts look to the number and severity of the incidents in determining whether a hostile work environment exists.  *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1143 (10th Cir. 2008).  To state a claim, "there must be a steady barrage of opprobrious racial comments."  *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994).  The work environment must be both objectively and subjectively hostile.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

Harper makes only vague and conclusory allegations of harassment.  From those, the Court is unable to tell the number or severity of the alleged incidents.  However, even if the Court assumed that there was harassment that was sufficiently severe or pervasive, the record does not indicate that the alleged harassment altered a term, condition, or privilege of Harper's

employment.  Without that, Harper cannot establish a prima facie case, and Defendant is entitled to summary judgment.

      D.    <u>Retaliation</u>

To state a prima facie case of Title VII retaliation, a plaintiff must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection exists between the protected activity and the materially adverse action."  *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (internal quotation marks omitted).

Harper relies on the same allegations for her discrimination and harassment claims as for the retaliation claim.  For the same reasons as discussed with those claims, the record does not demonstrate a materially adverse action against Harper.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) ("The employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.").  Additionally, assuming there was a materially adverse action, Harper's allegations do not show a causal connection to a protected activity.  She used the AlertLine and filed her initial EEOC Charge in April 2019, after all the allegedly discriminatory actions occurred.[1]  Even liberally construed, the Court finds no allegation sufficient to demonstrate the necessary causal connection to any protected activity.  Thus, Harper has failed to establish a prima facie case, and the Court will grant the Motion as to this claim.

---

[1] All except the alleged 2016 "demotion," but for reasons the Court has already addressed, that action is time-barred.

## II.    ADEA Discrimination, Harassment, and Retaliation Claims

### A.    Exhaustion of Administrative Remedies

Like her Title VII claims, Harper must have exhausted her administrative remedies concerning her age claims prior to bringing this suit.  *See Shikles v.Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1306 (10th Cir. 2005), *abrogated on other grounds by Lincoln v. BNSF Railway Co.*, 900 F.3d 1166 (10th Cir. 2018).  She filed a charge with the CCRD on May 3, 2017 alleging age discrimination and retaliation, FMF ¶ 28, which she voluntarily withdrew, FMF ¶¶ 29–32.  The CCRD dismissed Harper's Charge on November 8, 2017.  FMF ¶¶ 31.  Thus, she cannot rely on any event in her 2017 Charge.  Harper is left with the actions cited in her EEOC Charge on April 12, 2019.  As mentioned with her Title VII claims, Harper cannot rely on events prior to June 12, 2018.  FMF ¶ 54.

### B.    Discrimination

The same *McDonnell Douglas* burden-shifting framework that applies to Title VII claims applies to claims of age discrimination. *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir. 1998).  Unsurprisingly, the *prima facie* elements of an ADEA claim mirror those of a Title VII claim.  *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1229 (10th Cir. 2000). Similar to the Title VII claim, Defendant challenges Harper's claim on the existence of a prima facie case and lack of pretext.

#### 1.    Prima facie case of age discrimination

For similar reasons as discussed with her Title VII claim, Harper does not establish a prima facie case because she does not show that she suffered an adverse employment action or that such there was an inference of age discrimination.  Harper's sole allegation of an age-related comment of discrimination occurred in 2017 and is thus time-barred.  Even if the Court could

consider the comment, the comment about a "Young Professionals" event being "for young people" or "millennials," Exh. A at 63:23–64:2, does not create or support an inference of age discrimination.  Further, the Court notes that Griffin, Decker, and Gibson are all over the age of forty.  FMF ¶¶ 1, 6–7, 9.  On these facts, the Court finds no basis on which to find that any adverse action occurred under circumstances giving rise to an inference of age discrimination. Therefore, Defendant is entitled to summary judgment on this claim.

> 2.      Legitimate, nondiscriminatory reasons

Assuming Harper did establish a prima facie case, the Court considers whether Defendant meets its burden of providing legitimate, nondiscriminatory reasons for its actions.  Defendant's reasons under this claim are identical to those for the Title VII claim.  Thus, the Court finds that Defendant has met its burden.

> 3.      Pretext

For the same reasons stated regarding the Title VII claim, Harper fails to meet her burden of demonstrating pretext.  Harper does not point to any (and the Court finds no) basis for concluding that Defendant's proffered reasons are pretext for discrimination.  As a result, summary judgment in favor of Defendant is appropriate.

> B.      <u>Harassment</u>

The standard for evaluating an ADEA harassment claim is the same as under Title VII. As the Court has already addressed, the only allegation of derogatory comments about Harper's age is the untimely comment about a "Young Professionals" event being for "young people." Even if the Court could consider the comment, it alone does not establish a prima face case of harassment.  Other than that one comment, it is undisputed that Griffin never made any other comments or remarks about Harper's age that she found offensive.  Exh. A at 65:22–25, 66:10–

12.  The record is devoid of any other "discriminatory intimidation, ridicule, and insult[ ] that is sufficiently severe or pervasive to alter the conditions of [Harper's] employment.'" *Lounds*, 812 F.3d at 1222 (quotation omitted).  Summary judgment is appropriate on this claim.

      C.    <u>Retaliation</u>

Title VII and ADEA retaliation claims have the same elements.  As the Court explained above with the Title VII claim, Harper cannot demonstrate an adverse employment action or a causal connection to any protected activity.  Therefore, for the same reasons the Court has already offered, Defendant is entitled to summary judgment on this claim.

**CONCLUSION**

Accordingly, for the foregoing reasons, Defendant's Motion [<u>filed November 30, 2020; ECF 94</u>] is **granted**.  The Court directs the Clerk of the Court to enter judgment in Defendant's favor and to close this case.

Entered this 5th day of January, 2021, at Denver, Colorado.

                BY THE COURT:

                Michael E. Hegarty

                Michael E. Hegarty
                United States Magistrate Judge